CASE 37—FERRY PRIVILEGES—JUNE 16.

## Ballow vs. Pettus, &c.

**APPEAL FROM PULASKI CIRCUIT COURT.**

1. Appeals from judgments of county courts, on applications for the establishment, alteration, or discontinuance of ferries, may be prosecuted to the circuit court without supersedeas bond. (*Civil Code, secs.* 20, 22, *&c.*)

2. . P., the owner of the land on the north bank of Cumberland river, just below its junction with the South Fork of said river, in Pulaski county, obtained the consent of N., the owner of the opposite bank, for the establishment of ferries to and from said bank across the main stream, and also across the South Fork to the lands of B., who owned the lands above the junction between the two rivers. B. also, at same time, applied for the same privileges from his lands to the opposite bank. *Held*—That P. was not, and thàt B. was, entitled to the ferry across the South Fork. P. did not own the land on either side of said stream. (*Rev. Stat., secs.* 4 *and* 6, *chap.* 39.)

OWSLEY & DUNLAP,                  For Appellant,

CITED—

*Revised Statutes, secs.* 4, 6, 1 *Stanton,* 538.

JOHN S. VANWINKLE,                  For Appellees,

CITED—

*Revised Statutes, sec.* 6, *chap.* 39.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

This controversy arises out of the contemporaneous and rival applications of the parties for the privilege of establishing " a ferry across Cumberland river, at the crossing of the Somerset and Point Isabel road, and at the crossing of the South Fork of Cumberland river, in Pulaski county ."

It appears that said road is a public highway, and crosses the main prong of the Cumberland above and near its confluence with the South Fork; and that the land lying between the two streams and above their junction is owned by the appellant, and the appellees own the land on the north of the river, including the landing in the road, while that on the opposite side of the Cumberland below the junction, and of the South Fork above it, belongs to Samuel and John Newell, who consented that the appellees might have a ferry-landing on their land.

The county court granted to the appellees the privilege of establishing their ferry across the river below the mouth of the South Fork, and landing on the land of the Newells, on the south bank; and also thence across the South Fork, landing, necessarily, on the land of the appellant. And, at the same time, the court granted to the appellant the right to establish his ferry across the Cumberland above the mouth of the South Fork, landing with the road on the land of the appellees, on the north bank of the river.

From this judgment both parties prayed an appeal to the Pulaski circuit court; and that court, on hearing the case, reversed so much of the judgment as established the ferry of the appellant, and adjudged that the appellees, Pettus and others, have granted to them "a ferry across the main Cumberland river, at its confluence with the South Fork, and also across said river from the northern bank to the southwestern bank, so as to cross both streams; and also, the privilege of ferrying from said southwestern bank across the South Fork, to the landing where the public road comes down to the main stream."

This judgment is complained of as erroneous by the appellant, who seeks its reversal in this court.

Although both parties excepted to the judgment of the county court, and prayed an appeal therefrom, which was granted by that court, it does not appear that the appellant executed any supersedeas or appeal bond in the circuit court; and it is contended for the appellees in this court, that as the judgment of the circuit court is a substantial affirmance of that part of the order of the county court which grants to the appellees the right to ferry across the main Cumberland river, from their own land to that of the Newells, and thence across the South Fork, the same is not subject to be reviewed in this court, because it was not properly brought before the circuit court for revision.

It is declared in the 20th section of the Civil Code of Practice, that circuit courts shall have appellate jurisdiction of the judgments and final orders of the county courts on various subjects specified, and, among them, "the establishment, alteration, or discontinuance of ferries." And the 22d section of the Code provides, that "the appeals from orders and judgments of the county court may be taken in the same time, and in a similar manner, with appeals to the court of appeals, except the original papers and copies of the orders of the county court, shall be delivered by the clerk of the county court to the clerk of the circuit court, upon an appeal being taken, instead of a copy of the complete record."

The mode of prosecuting appeals to this court is prescribed in the first and second chapters of title 18 of the Code, and ordinarily only requires that a bond be given when it is desired to supersede the judgment. The appellant, therefore, had a right to prosecute his appeal to the circuit court, as he appears to have done, without executing a supersedeas bond, although the

manner of prosecuting appeals to the circuit court from the quarterly court, and certain other inferior courts, is differently regulated by the Code.

It remains to be determined whether the court erred in granting the privileges sought by the appellees to the entire exclusion of those asked by the appellant, and notwithstanding his opposition thereto.

The 4th section of chapter 39 of the Revised Statutes declares, that " a ferry shall be established only at the instance, and for the benefit, of the owner of the land where it is located, or of some one who has obtained from the owner the privilege of using the same for that purpose."

And, by section 6 of the same chapter, it is provided, that " if the applicant owns or has right to use the land proposed as *the site* of the ferry only on one side of the stream, and the landing on the opposite side be not at an established public highway, the court, before granting the ferry right, shall cause a writ of *ad quod damnum* to issue to ascertain the damages the owner of the land on the opposite side will sustain by establishing the necessary right of way over his land," &c.

It appears, from the testimony of Samuel Newell, that he consented, for himself and John B. Newell, that the appellees might use their lands for a landing on the west side of the South Fork; but he states that said John B. Newell " had only given a verbal authority for that purpose," and that he had not, at any time, consented or given the appellant permission to use the land as a landing, and would not do so.

While the permission thus given to the appellees may have been sufficient to authorize the county court to grant to the appellees the right to ferry the river from their own land on the north bank to the land of the New-

ells on the opposite side, we do not regard it as sufficient to authorize them, according to the statute referred to, to establish on the Newells' land the site of a ferry across the South Fork, so as to acquire the right to land on the appellant's land, even if it was practicable to ferry that stream to a landing in the public road, which, according to the evidence, does not cross it, but crosses the main stream above the junction.

It seems to us, therefore, the court erred in adjudging to the appellees the right to ferry the South Fork, with the necessary landing on the appellant's land, as neither landing of the ferry so granted belonged to them, nor had it been obtained by them for the purpose, according to our construction of the statute.

It seems to us, also, that the court erred in adjudging that the appellees have the exclusive right to ferry the river between the two landings on the line of the road. The right of the appellant appears to have been at least equal to theirs; and we think, under all the circumstances, the judgment of the county court was only erroneous in granting to the appellees the right to ferry the South Fork to a landing on the appellant's land.

It is true, if either party had previously obtained the right to establish a ferry across the Cumberland, and the same had not been waived or forfeited, another ferry could not have been established within one mile of it, according to the 16th section of the chapter of the Revised Statutes referred to, unless it be "in a town or city, or where an impassable stream intervenes."

But as both applications were made at the same time, and the landings on the south side of the main Cumberland river were separated by the South Fork, rendering each of them necessary, we are of the opinion that the judgment of the county court should only have been

reversed in the particular part we have indicated as erroneous.

Wherefore, the judgment of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.